[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Date of Sentence: December 21, 1989 Date of Application: January 19, 1990 Date Application Filed: February 16, 1990 Date of Decision: April 24, 2001
Application for review of sentence imposed by the Superior Court, Judicial District of Hartford.
Docket No. 54671.
Jon Schoenhorn, Defense Counsel, for Petitioner.
Christopher Morano, Assistant State's Attorney, for the State.
 BY THE DIVISION
Although the application for sentence review was not timely filed, the petitioner's right to a sentence review hearing was restored upon granting of his petition for habeas corpus.
The petitioner was convicted following a jury trial of the following offenses:
 A. Interfering with a search with a dangerous weapon (§ 54-33d)
B. Risk of Injury to a minor (§ 53a-21)
C. Reckless endangerment, 1st degree (§ 53a-63)
He was sentenced to a term often years for interfering with a search, ten years consecutive for risk of injury and one year concurrent for reckless CT Page 6718 endangerment. The total effective sentence was twenty years.
The factual findings supporting his conviction are reported in Statev. Jenkins, 24 Conn. App. 330 (1991):
 On July 26, 1988, twelve police officers converged on an apartment on Hampton Street in Hartford to execute a search warrant for narcotics, drug paraphernalia and weapons. When the police arrived, the apartment was occupied by a female tenant, her two year old child, a twelve year old child, and by, another woman, the defendant, and six other males. The officers' initial attempts to gain entry without force failed when the defendant threatened to shoot the officers if they set foot inside the unit. Because of the defendant's threat, a two hour standoff ensued during which the police called in an emergency response team, notified a hostage negotiator, and evacuated a family from a nearby apartment. The episode caused a crowd, estimated at between 300 and 400 people, to gather outside the building. The police called for backup units to bring sledgehammers to break down the door.
 A refrigerator blocked the first door that the police tried to open. Following their successful forced entry at a second door, Sergeant Frank Campbell and Detective Peter Getz encountered the defendant brandishing a gun and holding the two year old. The officers also observed several other people in the unit. The defendant's threats to shoot the officers compelled them to back out of the apartment. From their position in the stairway, the police shouted for the defendant to release the women and children. The door then opened and the two women and the twelve year old child emerged. The two year old appeared in the doorway, but the defendant quickly pulled the child back and slammed the door.
 Meanwhile, Officer Paul Kutcher, who was positioned outside the building, observed several people in the apartment throwing things into the sink. Kutcher also saw the defendant hold the now crying two year old out the window, shielding himself with the child while shouting threats to the police and attempting to incite the crowd. The police in the stairway heard male voices yelling from inside the apartment that CT Page 6719 they wanted to surrender. The police told them to crawl out on their stomachs one at a time. Several males existed the apartment in this fashion, leaving only the defendant, the child and another male in the unit.
 The police were subsequently approached by the defendant's attorney, who had apparently been contacted by the defendant during the standoff. The attorney talked with the defendant from outside the apartment door. As a result of this conversation, the defendant released the child and surrendered to the police. The subsequent search of the apartment yielded the following evidence: a handgun and bullets, a gram scale with cocaine residue, vial containers and caps, .38 caliber bullets and a police radio scanner.
Petitioner's counsel argues that the sentence was overly harsh under the circumstances. He notes that the child was not physically injured and further stresses that several police spoke out against Jenkins at his sentencing, essentially depicting him as a dangerous drug dealer without substantiating these claims; and that the presence of those police officers in the courtroom had an unfair influence on the sentencing court.
The petitioner stated his remorse and attributes his actions to the influence of drugs.
In arguing against a modification, the State's Attorney posits that the sentence effectively closed down Jenkins' drug trafficking operation and was appropriately necessary for deterrent reasons. The sentencing court had, indeed, commented that a lengthy sentence was needed to deter the petitioner from his criminal activity.
The petitioner did have several prior convictions which included both felony and misdemeanors. He also had other criminal charges pending at the time of sentencing which arose while he was out on bond in the present case, which included possession of narcotics with intent to sell.
In short, the petitioner was convicted of very serious crimes. Not only was his behavior on holding a frightened two year old child out of a window heinous, police officers were jeopardized and he was inciting a crowd of 300 to 400 people as well. Further there were substantial indications both from trial testimony and evidence as well as reliable statements at the sentencing hearing, of his involvement in the narcotics trade. CT Page 6720
This Division cannot find that the sentence was inappropriate or disproportionate in light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended. (Practice Book § 43-28). The sentence is, therefore, affirmed.
Klaczak, O'Keefe and Iannotti, J.s, participated in this decision.